**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jan Osborn, | No. CV-15-02421-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Jan Osborn seeks review of the Social Security Administration Commissioner's decision denying her application for benefits under the Social Security Act. (Doc. 21; Doc. 26.) For the reasons below, the Court will remand this matter for further proceedings.

## I.    Background

On December 30, 2013, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of January 1, 2012. (AR[1] 16.) Plaintiff's application was initially denied on May 2, 2014, and denied upon reconsideration on December 10, 2014. (*Id.*)

Pursuant to Plaintiff's request, a hearing was held on June 9, 2015, before Administrative Law Judge (ALJ) Carla L. Waters. (*Id.*) In a decision dated July 31, 2015, the ALJ ruled Plaintiff is not entitled to disability benefits because she is "not

---

[1] Citations to "AR" are to the administrative record.

disabled under sections 216(i) and 223(d) of the Social Security Act." (*Id.* at 24.) On September 24, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (*Id.* at 1-3.)

Having exhausted the administrative review process, on November 25, 2015, Plaintiff sought judicial review of the ALJ's decision by filing a Complaint in this Court pursuant to 42 U.S.C. § 405(g).  (Doc. 1.) On July 27, 2016, Plaintiff filed an Opening Brief, seeking remand of this case to the Social Security Administration for an award of benefits or, in the alternative, for further proceedings. (Doc. 21.) On September 26, 2016, Defendant filed a Response Brief in support of the Commissioner's decision. (Doc. 25.) On October 11, 2016, Plaintiff filed a Reply Brief. (Doc. 26.)

## II.   Legal Standards

### a.  Standard of Review

The Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's disability benefits determinations. The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions.  *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The Court "must

uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).   The Court reviews only those issues raised by the party challenging the ALJ's decision.   *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).   Similarly, the Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### b. The ALJ's Five-Step Evaluation Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  A person is under a disability only:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded,

> ending the inquiry.  *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" [(RFC)] in determining whether the claimant can still do past relevant work or make an adjustment to other work.  *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013).  "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Applying the five-step evaluation process, the ALJ found that Plaintiff is not disabled and is not entitled to benefits. (AR 16-24.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date through her last date insured.  (*Id.* at 18.)  At step two, the ALJ found that Plaintiff had the following severe impairments: status post breast cancer with bilateral mastectomies, anterior hypertrophic spurs of the lumbar and thoracic spine, asthma, peripheral neuropathy, and status post peripheral pulmonary embolism. (*Id.*) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 20.)

At step four, the ALJ found the following:

> [Plaintiff] had the [RFC] to perform sedentary work as defined in 20 CFR § 404.1567(a) except she is able to stand and/or walk for a total of 6 hours in an 8-hour day. She can occasionally climb and balance; frequently kneel, crouch, and crawl. [Plaintiff] should avoid concentrated exposure to odors, dust, fumes, and gases.

(*Id.*) The ALJ further found that Plaintiff "was capable of performing past relevant work as an insurance sales agent and telephone solicitor. This work did not require the performance of work-related activities precluded by" Plaintiff's RFC.  (*Id.* at 24.)  Given that finding, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from January 1, 2012, the alleged onset date, through December 31, 2014, the date last insured." (*Id.*)

### III.     Analysis

Plaintiff argues that the ALJ's decision is defective for three reasons: (1) the ALJ erred in finding Plaintiff's mental impairments not severe at step two of the five-step analysis; (2) the ALJ improperly rejected the medical opinions of Plaintiff's treating physician; and (3) the ALJ improperly rejected Plaintiff's symptom testimony. The Court addresses each argument below. (Doc. 21.)

#### a.  Severe Mental Impairment

##### i.  Legal Standard

Plaintiff argues that the ALJ erred in finding Plaintiff's mental impairments "not severe" at step two of the five-step analysis. (*Id.* at 10-15.) At step two, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). To find the claimant's impairment severe, the impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities include: physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(1)-(6). An impairment is "not severe" only if the evidence establishes a slight abnormality with minimal effect on the individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

Importantly, the inquiry "is to do no more than allow the [Social Security Administration] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." SSR 85-28, 1985 WL 56856 (internal quotations omitted). "'[I]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Id.* Further, the ALJ "is required to consider the claimant's

subjective symptoms, such as pain or fatigue, in determining severity." *Smolen*, 80 F.3d at 1273 (citing SSR 88-13). Thus, the Court's task in reviewing a non-severe finding at step two is to "determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

The ALJ uses a "special technique" to evaluate medically determinable mental impairments at each level of the administrative review process. 20 C.F.R. § 404.1520a. The ALJ must rate the degree of claimant's functional limitations resulting from the impairment. 20 C.F.R. § 404.1520a(c)(1). Rating the degree of functional limitation is a "complex and highly individualized process." *Id.* There are four broad functional areas to rate a claimant's degree of limitation: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The degree of limitation is rated on a five point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of functional limitation resulting from the impairment determines the severity of the claimant's mental impairment. 20 C.F.R. § 404.1520a(d). The ALJ will generally conclude the claimant's impairment is not severe if the ALJ finds that the degree of limitation in the first three areas as "none" or "mild," unless there is evidence to the contrary. 20 C.F.R. § 404.1520a(d)(1).

### ii. The ALJ erred in finding Plaintiff's mental impairments not severe.

Plaintiff argues that her testimony describing her difficulty concentrating and challenges with anxiety, medical evidence regarding her prescription medication regimen, and the state agency physician's observation that Plaintiff appeared "hyperactive" show Plaintiff's depressive and anxiety disorders are severe impairments. (Doc. 21 at 11-12.)

The ALJ acknowledged that Plaintiff's depression and anxiety were "medically determinable mental impairments." (AR 19.) However, the ALJ determined that the impairments "did not cause more than minimal limitation in the claimant's ability to

perform basic mental work activities and were therefore nonsevere." (*Id.*) The ALJ reasoned that (1) there are no medical records of psychiatric hospitalizations, mental health treatment, or medication; (2) Plaintiff's mental impairments did not limit her daily living; (3) Plaintiff's mental impairments did not limit her concentration, persistence or pace; and (4) Plaintiff's mental impairments did not limit her social functioning. (*Id.*)

The Court finds the ALJ's determination at step two that Plaintiff's mental impairments were nonsevere is not supported by substantial evidence. First, the ALJ asserted that there were "no psychiatric hospitalizations, mental health treatment or medications." (*Id.*)   However, Plaintiff received mental health treatment from her primary care treating physician, Dr. William Womak, who prescribed Plaintiff Prozac and Trazodone, and gave Plaintiff a referral for psychological testing. (*Id.* at 286, 288, 353.)   Further, although there is no record of psychiatric hospitalizations, Dr. Birsen Yuzak, on whose opinions and findings the ALJ based her decision, noted Plaintiff "appeared to be hyperactive." (*Id.* at 411.)   Further, two years earlier, treatment notes from Plaintiff's two visits to the emergency room in August 2012 also describe the Plaintiff as "anxious," "somewhat erratic," and a hospital case manager was concerned Plaintiff "wanted to harm herself." (*Id.* at 234, 238, 265.)   Plaintiff was eventually evaluated and "cleared from a psychiatric standpoint." (*Id.* at 265.)   This record evidence, cited by the ALJ, does not clearly establish that Plaintiff's mental impairments were not severe.

Further, the record contains evidence regarding Plaintiff's limited financial resources.   However, the ALJ failed to address or consider Plaintiff's financial status related to the lack of treatment records. (*Id.* at 19); *Edwards-Alexander v. Astrue*, 336 F. App'x. 634, 636 (9th Cir. 2009) (unpublished) (finding the ALJ incorrectly ruled claimant's mental impairment was not severe by relying on claimant's failure to seek psychiatric medical treatment even though the record showed the claimant could not

afford it).[2]   Moreover, the lack of hospitalization does not necessarily render Plaintiff's mental impairments non-severe at step two.

Second, the ALJ analyzed the severity of Plaintiff's mental impairment using the 20 C.F.R. § 404.1520a "special technique."  (*Id.* at 19.)  The ALJ concluded Plaintiff has no functional limitations and experienced no episodes of decompensation.[3]   (*Id.* at 19.)  The ALJ inadequately explained why Plaintiff's mental impairments do not limit her concentration, persistence, or pace.  The ALJ reasoned that "treating medical professionals have not observed the claimant experience any difficulty with concentration."  (*Id.* at 19.)  However, the ALJ did not address Dr. Yuzak's report, which noted Plaintiff appeared to be "hyperactive" during the consultative exam, or the hospital record stating Plaintiff was "erratic."   (*Id.* at 19, 238, 411.)   Moreover, Plaintiff's Functional Report states that she cannot complete tasks, and she does not handle stress or changes in routine well.  (*Id.* at 187-98.)   Plaintiff also testified that she suffers from depression, has anxiety attacks, and has trouble concentrating and completing tasks. (*Id.* at 56-57.) The ALJ failed to specifically discuss this testimony. Therefore, the ALJ's determination that Plaintiff's mental impairments do not limit her concentration, persistence or pace is not supported by substantial evidence.

Finally, the ALJ inadequately supported her finding that Plaintiff's mental impairments do not limit her daily living.  The ALJ cited to Plaintiff's Functional Report, in which Plaintiff reported she can care for pets, handle personal care, socialize with neighbors, and use public transportation.  (*Id.* at 19.)  However, the ALJ did not address

---

[2]  Plaintiff also argues the ALJ should have sent her for a psychological evaluation because the ALJ had a duty to develop the record. (Doc. 21 at 12.)  However, as detailed below, the Court will remand this matter for further consideration of Plaintiff's mental impairments.  The ALJ will therefore have an opportunity to obtain additional medical opinion evidence on remand if appropriate.

[3] Plaintiff argues the ALJ should have conducted this evaluation of mental impairments at step three, not at step two, of the disability evaluation process. (Doc. 21 at 15.) However, the Ninth Circuit has held that the ALJ is bound by 20 C.F.R. § 404.1520a at step two of the disability determination. *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011) (finding, at step two, that the "ALJ is bound by 20 C.F.R. § 404.1520a" when determining whether a claimant has a medically severe impairment). After the ALJ considers the degree of a claimant's functional limitation and determines the mental impairment is severe, then the ALJ proceeds to step three of the disability analysis. *Id.*

Plaintiff's statements that she is limited in house and yard work due in part to fatigue, or Plaintiff's testimony regarding issues with her sleep schedule.  (*Id.* at 55, 195.) Specifically, Plaintiff testified that she will unintentionally fall asleep, and sometimes fall asleep on a "Monday, and [wake] up on a Wednesday." (*Id.* at 55.)  While the Court acknowledges that Plaintiff noted many of her daily activities were limited due to her low income, the ALJ failed to sufficiently explain how Plaintiff's daily activities are inconsistent with severe depression or anxiety.  *Edwards-Alexander*, 336 F. App'x. at 636 (finding the ALJ failed to explain the assertion that socializing a few times a week and regular church attendance were inconsistent with severe depression).

The record as a whole "includes evidence of problems sufficient to pass the de minimis threshold of step two." *Webb*, 433 F.3d at 687.   Therefore, the Court finds that the ALJ erred in determining that Plaintiff's mental impairments were not severe at step two.

The Court also finds the ALJ's error was harmful. A step two error may be harmless if the ALJ, in formulating the RFC determination, nevertheless considers "any functional limitations" that might be caused by the impairment. *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005). But, here, in discussing the RFC, the ALJ simply acknowledged and dismissed Plaintiff's alleged mental impairments:

> The conclusion that the claimant does not have mental functional limitations is supported by the lack of psychiatric hospitalizations, lack of mental health treatment, and lack of recommendations by other medical professionals for mental health care.

(AR 23.) The ALJ did not otherwise account for these impairments in evaluating Plaintiff's RFC. Thus, the ALJ committed harmful error in finding at step two that Plaintiff's mental impairments were not severe.[4]

---

[4] The Court has found harmful error at step two and must vacate the Commissioner's decision. However, the Court will analyze Plaintiff's other arguments of error in the context of her severe physical impairments because they relate to Plaintiff's requested relief of an immediate award of benefits.

### b. Weighing of Medical Source Evidence

Plaintiff next argues that the ALJ erred in weighing the opinions of Dr. William Womak, treating physician. (Doc. 21 at 15.) Below, the Court addresses the ALJ's treatment of Dr. Womak's opinions.

#### i. Legal Standard

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original) (citations omitted).

#### ii. The ALJ did not err in assigning little weight to the opinions of treating physician, Dr. Womack.

Dr. Womak began treating Plaintiff in 2008 for several conditions, including

spinal impairments, chronic pain, fatigue, asthma, and peripheral neuropathy.  (AR 332-407, 417-23.)  During the period of 2008 through 2015, Plaintiff saw Dr. Womak for evaluation of several symptoms, including respiratory complaints, back pain, neck pain, and anxiety. (*Id.*)

On September 22, 2014, Dr. Womak completed a Medical Assessment of Ability to Do Work-Related Physical Activities form.  (*Id.* at 408-09.)  Dr. Womak opined that: (1) Plaintiff cannot perform work eight hours a day, five days a week on a regular and consistent basis; (2) Plaintiff can sit for less than two hours in an eight-hour work day; (3) Plaintiff can stand/walk for less than two hours in an eight-hour work day; (4) Plaintiff can lift and carry less than ten pounds; (5) Plaintiff would not benefit from alternating between sitting, standing, or walking, and if Plaintiff changed positions she must periodically lie down to rest; (6) Plaintiff has moderate limitations of pain, fatigue, dizziness, and headaches; and (7) Plaintiff would miss more than six days from work each month.  (*Id.*)  On May 1, 2015, Dr. Womak completed a second Medical Assessment of Ability to Do Work-Related Physical Activities form with the same limitations, except he described Plaintiff's pain and fatigue as severe.  (*Id.* at 424-25.)

Dr. Womak's opinions were contradicted by the opinions of examining physician, Dr. Birsen Yuzak, and non-examining physician, Dr. Martha Goodrich.  (*Id.* at 77-80, 410-16.)  The ALJ could, therefore, discount Dr. Womak's opinions for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

The ALJ gave Dr. Womack's opinions little weight for the following reasons:  (1) Dr. Womak's form and treatment notes do not support or explain the extreme limitations opined; (2) Dr. Womak prescribed Plaintiff conservative treatment and gave few recommendations for specialists; (3) Dr. Womak's opinions about Plaintiff's limitations were inconsistent with Dr. Birsen's and Dr. Goodrich's opinions; (4) Dr. Womak's opinions appear to be based on Plaintiff's subjective reports; (5) Dr. Womak is not a specialist; and (6) Dr. Womak's opinions are inconsistent with Plaintiff's daily activities. (AR 22-23.)

The Court finds that the ALJ gave specific and legitimate reasons supported by

substantial evidence for giving little weight to Dr. Womak's opinions. First, the ALJ asserted that Dr. Womak's opinions regarding Plaintiff's extensive sitting limitations were not supported or explained. (AR 22.) Dr. Womak opined that Plaintiff could sit for less than two hours in an eight-hour workday, but provided no explanation for the limitation besides noting that Plaintiff experienced pain in her "back and feet and neck." (*Id.* at 408.) Plaintiff asserts generally that Dr. Womak's opinions "drew upon his personal observations of his patient, gleaned over monthly examinations over the course of several years." (Doc. 21 at 16.) However, Plaintiff concedes, "Dr. Womack's record keeping may be less than that desired by the ALJ." (*Id.*) An ALJ may "permissibly reject[ ] …check-off reports that [do] not contain any explanation of the bases of their conclusions." *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).

Additionally, Dr. Womack's treatment notes do not support the limitations opined. Several of Dr. Womak's treatment notes reflect objective normal results or mild symptoms, and/or limited to no physical examination findings. (*See, e.g.*, AR 290, 295, 301, 305, 313-18, 417-23.) Incongruity between a doctor's medical opinion and treatment notes is a specific and legitimate reason to discount that doctor's opinion. *Tommassetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Therefore, the ALJ did not err in rejecting Dr. Womak's opinions for this reason.

Second, the ALJ found that Dr. Womak prescribed a conservative course of treatment inconsistent with his determination that Plaintiff would miss six days of work per month and experience severe pain and fatigue. (AR 22.) Specifically, the ALJ noted that if Plaintiff had such severe limitations, the record would show treatment, including extensive medication, surgeries, and frequent medical monitoring, beyond the "routine medication management" documented in the treatment records. (*Id.*)

The treatment record supports the ALJ's findings. Several of Dr. Womak's treatment notes largely report Dr. Womak consistently recommended routine medication

management and Plaintiff primarily returned to Dr. Womak only to get refills for her prescriptions over the course of years. (AR 332-407, 417-23.)    Therefore, it was reasonable for the ALJ to find that the record would show more aggressive treatment recommendations if Plaintiff were truly as limited as Dr. Womak opined.  *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that because a "conservative course of treatment" is "not the sort of recommendation one would expect to accompany a finding that [the Plaintiff] was totally disabled," the ALJ "provided adequate reasons for not fully crediting [the treating physician's] statements"); *see also Hanes v. Colvin*, 651 F. App'x. 703, 705 (9th Cir. 2016) (unpublished) (holding that an "ALJ reasonably relied on . . . conservative treatment" consisting of "minimal medication, limited injections, physical therapy and gentle exercise" to "conclude that the assessments of [two treating physicians] were inconsistent with the objective evidence in the record").

Plaintiff argues that the ALJ "presumes that Osborn could afford [additional] treatment, and that the treatment would necessarily provide a benefit greater than that achieved by Dr. Womak."  (Doc. 21 at 17.)  However, Plaintiff does not point to any of Dr. Womak's treatment notes or other clinical evidence to suggest Plaintiff needed, or Dr. Womak recommended, a more aggressive course of treatment. Rather, Dr. Womak's treatment notes are void of specific findings regarding Plaintiff's imaging of her back and chest, or thorough physical examinations.  Besides briefly noting Plaintiff's issues, the treatment notes and other objective evidence in the record provide little support for Dr. Womak's opinions that Plaintiff has severe limitations on her ability to sit and stand, or that Plaintiff needs to miss more than six workdays a month.  (AR 285-86, 295, 298, 304-05, 311, 346, 407-17.)   Therefore, the ALJ did not err in rejecting Dr. Womack's opinions on this basis.

Third, the ALJ found that Dr. Womak's assessment is contradicted by the opinions of examining physician, Dr. Yuzak, and state agency, non-examining physician, Dr. Goodrich.  (*Id.* at 23.)

On November 19, 2014, Dr. Yuzak examined Plaintiff and completed a Medical Source Statement of Ability to Do Work-Related Activities form. During the

examination, Dr. Yuzak noted that Plaintiff was able to get on and off the exam table quickly, she was able to get up from the sitting position quickly, she was able to grab bottles and lift them up and down three times without difficulty and without dropping them, her gait was normal, tandem toe-heel walking was normal, squatting was normal, Romber test was negative, she had a normal range of motion in her joints, spine, and thumb, straight leg tests were negative, there were no muscle spasms, she had normal muscle tone bulk and strength in her upper and lower extremities, her bilateral grip strength was normal, and she had sensitivity in her feet.  (*Id.* at 412-13.)  Based on these results, Dr. Yuzak opined that Plaintiff could lift 10 pounds, stand and/or walk for six hours in an eight-hour work day, and can sit for a full eight-hour work day.  (*Id.* at 414-15.)  Dr. Yuzak further opined that based on Plaintiff's chronic fatigue and peripheral neuropathy of the feet, she can frequently stoop, kneel, crouch, and crawl, can occasionally climb and balance, and is not limited in reaching, handling, fingering, or feeling.  (*Id.* at 415-16.)  Finally, Dr. Yuzak opined that Plaintiff is restricted from working around dust/fumes or gases due to her asthma.  (*Id.* at 416.)

On December 9, 2014, state agency physician Dr. Goodrich completed a Disability Determination Explanation at the Reconsideration level based upon her review of the record.  (*Id.* at 72-80.)  Dr. Goodrich opined there was insufficient evidence detailing Plaintiff's impairments; therefore, Plaintiff's impairments were not severe.  (*Id.* at 78-79.)  Dr. Goodrich explained that there were only "rare exam documents and they are very superficial, the majority of visits document no physical exams at all." (*Id.* at 78.) She also noted that Plaintiff's medical record includes "no imaging or testing" and only one set of labs.  (*Id.*)  Moreover, Dr. Goodrich explained that Plaintiff was referred to a Consultative Examination because Plaintiff's primary care treating physician "does not document adequate exams." (*Id.*) She noted the Consultative Exam findings are "entirely normal except diminished sensation of the bilat [sic] feet," no "muscle spasm, or atrophy, no joint swelling or deformity, lungs were clear," and Plaintiff had normal strength, reflexes, and gaits.  (*Id.*)  Dr. Goodrich found Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by

the medical evidence alone.  (*Id.* at 79.)  She also referenced Plaintiff's medical history and noted there was evidence of mild peripheral pulmonary embolism and peripheral neuropathy.  (*Id.* at 78.)  The ALJ gave some weight to Dr. Goodrich's opinion, to the extent that Dr. Goodrich thoroughly analyzed the objective medical evidence.  (*Id.* at 23.)  However, the ALJ found that that there was sufficient evidence to make a determination regarding Plaintiff's RFC.

Plaintiff argues that the ALJ erred in relying on the opinions of Dr. Yuzak and Dr. Goodrich to discredit Dr. Womak's assessments because the ALJ failed to provide specific and legitimate reasons to reject the treating physician's opinion.  (Doc. 21 at 22.)  Plaintiff likewise generally asserts that "Dr. Yuzak's contrary findings do not justify the rejection of Dr. Womak's opinions."  (*Id.* at 22.)  However, as stated above, Dr. Yuzak's and Dr. Goodrich's assessments each cite to and analyze medical evidence in the record.

Further, Dr. Yuzak provided a report detailing his examination findings, which are consistent with the ALJ's findings regarding Plaintiff's limitations. Dr. Goodrich's analysis relied, in part, upon Dr. Yuzak's report.  The Court finds Dr. Yuzak's objective findings and opinions are a sufficient basis upon which to reject Dr. Womak's opinions.  *Batson*, 359 F.3d at 1195 (upholding ALJ's rejection of two treating physicians' opinions, in part because of their conflict with a consultative medical evaluation); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (examining and reviewing source opinions constitute substantial evidence where consistent with independent clinical findings or other record evidence).

Fourth, the ALJ found that Dr. Womak's opinions are based on Plaintiff's subjective reports, rather than objective medical evidence, because the opinions deviate to such a degree from the objective medical evidence the ALJ discussed in the record.  (AR 23.)  The Court finds, based on the lack of objective findings that support Dr. Womack's opinions, that the ALJ properly gave little weight to Dr. Womak's opinions for this reason.

Plaintiff argues that Dr. Womak's assessments are based on x-ray evidence and supported by Dr. Yuzak's examination report, which found sensitivity in Plaintiff's feet

due to peripheral neuropathy. (Doc. 21 at 18-19.) However, Plaintiff cherry-picks from the record and ignores the overall objective findings. Dr. Yuzak's examination findings, as detailed above, largely contradict Plaintiff's arguments.  And, as also stated above, Dr. Yuzak supported his opinion with clinical findings, whereas Dr. Womak's treatment notes rarely cite to any objective findings.  *See Batson*, 359 F.3d at 1195 (finding that when a treating physician's opinions "do not have supporting objective evidence, [are] contradicted by statements and assessments of [Plaintiff's] medical condition, and [are] based on the [Plaintiff's] subjective descriptions of pain," the ALJ need not fully credit them); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (finding that substantial evidence supports the ALJ's decision not to rely on physician's opinion that is based on plaintiff's complaints).

The Court finds that the remaining reasons provided by the ALJ for giving little weight to Dr. Womack's opinions, that Dr. Womack is not a specialist and his opinions are inconsistent with Plaintiff's daily activities, are not supported by substantial evidence. Generally, the ALJ may consider whether a treating physician is a specialist in determining how much relative weight to afford an opinion. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). Here, however, the ALJ failed to cite to any evidence that Dr. Womack was not sufficiently qualified to opine regarding Plaintiff's limitations. *See Lester*, 81 F.3d at 833 (explaining that the Plaintiff's treating physician's opinion is "entitled to special weight" because the "physician's role [is to consider] all available information regarding" his patient's impairments" and "form an overall conclusion as to functional capacities and limitations").

The ALJ also did not discuss or make any finding regarding the amount of time per day that Plaintiff spends engaged in daily activities.  *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("physical activities did not consume a substantial part of Ms. Vertigan's day. This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited

- 16 -

walking for exercise, does not in any way detract from her credibility as to her overall disability"). Therefore, the Court does not find this reason to be supported by substantial evidence.

However, the Court finds that the ALJ's reliance on the fact that Dr. Womak is not a specialist and Plaintiff's daily activities, even if erroneous, amounts to harmless error because the ALJ provided other specific and legitimate reasons supported by substantial evidence for discounting Dr. Womack's opinions, as discussed at length above.  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination.") (quoting *Carmickle v. Comm'r*, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)); *Howell v. Comm'r So. Sec. Admin.*, 349 Fed. Appx. 181, 184 (9th Cir. 2009) (stating that "[a]n ALJ ought not dismiss a treating physician's testimony merely because it was contained on [a check off] form" but finding any error in doing so harmless because ALJ had "enough evidence" to reject the physician's testimony).

Accordingly, the Court finds that the ALJ did not err in giving Dr. Womak's opinion little weight.

### c.  Plaintiff's Symptom Testimony

#### i.  Legal Standard

Plaintiff argues that the ALJ erred in evaluating Plaintiff's symptom testimony. (Doc. 13 at 7-9.)   An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d at 1014-15 (citing *Lingenfelter*, 504 F.3d at 1035-36).   "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom.  *Smolen*, 80 F.3d at 1282. Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected to produce his pain."

*Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160-61 (9th Cir. 2008) ("requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon").

Second, if a claimant shows that she suffers from an underlying medical impairment that could reasonably be expected to produce her pain or other symptoms, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms, including pain, limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1).   General assertions that the claimant's testimony is not credible are insufficient. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (citation omitted).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."   *Smolen*, 80 F.3d at 1284; *see Orn*, 495 F.3d at 637-39. The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ."   *Smolen*, 80 F.3d at 1284 (citation omitted).

At this second step, the ALJ may reject a claimant's testimony regarding the severity of his or her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins*, 466 F.3d at 883), or if the ALJ offers "clear and convincing reasons" for finding the claimant not credible. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036).  "'The clear and

- 18 -

convincing standard is the most demanding required in Social Security Cases.'" *Garrison*, 793 F.3d at 1015 (quoting *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, because there was no affirmative finding of malingering, the ALJ was required to provide clear and convincing reasons for concluding that Plaintiff's subjective complaints were not wholly credible.

### ii. The ALJ did not err in discounting Plaintiff's testimony.

With regard to Plaintiff's testimony, the ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 21.) The ALJ then found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not entirely credible. (*Id.*)

At the hearing, Plaintiff testified that she cannot work because she experiences neck pain every day and has pain in her shoulders, back, and feet.  (*Id.* at 45.)  She can only stand for a "few minutes" before feeling faint, has "chronic fatigue," lays down for a couple of hours or more during the day due to pain and fatigue, and spends most of the day in a reclining position. (*Id.* at 45-46, 52.) She also testified that she cannot perform household chores, has low energy, and will unintentionally fall asleep on "a Monday, and [wake] up on a Wednesday."  (*Id.* at 48, 55.)  She estimated that she could lift no more than five pounds.  (*Id.* at 46.)

Further, she claimed she becomes "overwhelmed," has anxiety, and has trouble concentrating.  (*Id.* at 56.)  Plaintiff testified she could neither prepare meals nor complete household chores and has gone "dumpster diving to get food."  (*Id.* at 48.)  She takes a trolley to the store "now and then," feeds her pets, and visits with neighbors.  (*Id.* at 46, 48, 50.)

The ALJ found Plaintiff's testimony regarding the severity of her symptoms not fully credible because: (1) Plaintiff's testimony is inconsistent with her work history; (2) Plaintiff's testimony is inconsistent with her treatment history; (3) Plaintiff's testimony is inconsistent with other medical opinion evidence; (4) the severity of Plaintiff's symptoms are not supported by objective medical evidence; (5) Plaintiff's alleged asthma is

inconsistent with her failure to stop smoking; and (6) the ALJ found evidence in the record that Plaintiff is experiencing financial difficulties and "may have a motive other than disability for seeking benefits." (*Id.* at 21-22.)

The Court finds that the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony. First, the ALJ properly considered Plaintiff's work history in discounting her symptom testimony. More specifically, the ALJ cited to evidence in the record that Plaintiff experienced symptoms of peripheral neuropathy after undergoing radiation and chemotherapy in 1995, including "chronic fatigue, [and] a decreased sensation of both feet." (*Id.* at 410.) However, Plaintiff worked full-time at her past employment as an insurance broker for approximately nine years after her chronic fatigue and decreased sensation of both feet began in 2000. (*Id.* at 60, 184-85, 410.) And, the ALJ noted that although Dr. Yuzak found Plaintiff had sensitivity in her feet during his examination, the medical record evidence does not indicate Plaintiff's peripheral neuropathy worsened.

In response, Plaintiff argues that her condition has worsened more recently. In support of this argument, she cites to her reports to Dr. Yuzak during his examination that "she cannot feel her feet," and her statement during the hearing that her condition has worsened. (Doc. 21 at 24; AR 410, 52-53.) However, Plaintiff fails to point to any other evidence in the record, including any treatment records, that indicate her condition worsened from 2000 to the present. Further, Plaintiff reported to Dr. Yuzak that the decreased sensation in her feet began about five years after her chemotherapy. (AR 410.) Therefore, the ALJ properly discounted Plaintiff's testimony regarding her symptoms based on Plaintiff's work history. *See Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988) (upholding adverse credibility determination where there was substantial evidence in the record that the plaintiff's "back problems had not prevented her from working" for years).

The ALJ also properly discounted Plaintiff's symptom testimony because it was inconsistent with her treating physician's continued recommended conservative treatment. The ALJ reasoned that because "there were no recommendations for surgery,

injections, a TENS unit," or recommendations to specialists, this "suggests that the impairment is not as substantial as alleged." (AR 21.) The ALJ cited to treatment records showing that Plaintiff's treatment with Dr. Womack was limited to medication management. (*Id.* at 21, 23.) Dr. Womak first prescribed Plaintiff the pain medication Hydrocodone in August 2011 to treat her chronic pain, which she continued to refill through 2012. (*Id.* at 313, 301.) Dr. Womak changed Plaintiff's prescription to Percocet in October 2012 to manage her pain, which she continued to refill through April 2015. (*Id.* at 277-285, 301, 417-23.) Additionally, Dr. Womak prescribed Plaintiff Prozac in November 2013 (*id.* at 288) and Trazodone in January 2014 (*id.* at 286) to treat her depression. The record also reflects that except for two hospital visits in 2008 for mild peripheral pulmonary embolism, Plaintiff's medical records largely reported that she was primarily returning to her primary care doctor to get refills for her prescriptions. (*Id.* at 347-400.) *See Warre v. Comm'r of the Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (finding that a failure to request "any serious medical treatment for [claimant's] supposedly excruciating pain" was adequate reason to reject the claimant's pain testimony); *see also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment).

Plaintiff claims in her Reply that Dr. Womack did not refer her to specialists or recommend additional care because he knew she could not afford it. (Doc. 26 at 5.) However, Plaintiff fails to point to any evidence in the record to support this contention, other than the fact that Plaintiff is noted in some records to not have health insurance. Further, a review of the record indicates that Dr. Womack did refer Plaintiff to specialists when he thought it was appropriate, including a psychologist for testing, a dermatologist for a skin lesion, and an eye doctor. (AR 353, 356, 420.) However, outside of one referral for a cortisone shot based on Plaintiff's request, Dr. Womack did not indicate referrals were required to manage Plaintiff's fatigue or pain symptoms. (*Id.* at 276-407,

417-23.) Therefore, Plaintiff's claim that Dr. Womack failed to recommend more treatment for Plaintiff because he knew she could not afford it is speculative and unsupported by record evidence.

Further, although the record includes evidence that Plaintiff has quite limited financial resources, Plaintiff fails to cite to any record evidence that Plaintiff did not request or obtain additional treatment for her pain and fatigue *because* she could not afford it. Notably, during the hearing, Plaintiff did not claim that she would have sought additional treatment related to her fatigue and pain had she been able to afford it. Rather, she testified she was supposed to make a follow up appointment with her oncologist, but "can't remember what happened," on one occasion, she didn't stay at the hospital for the full recommended amount of time because she had to feed her mother's animals, she was referred for physical therapy, but she thought it was ineffective and a waste of time, and she was referred to a pain clinic, but she didn't want to take the medication they prescribed her because she thought it was too strong.   (*Id.* at 39, 43, 47-48, 54.). Accordingly, the ALJ properly considered Plaintiff's recommended conservative treatment history with Dr. Womack in discounting Plaintiff's testimony.

The ALJ also discounted Plaintiff's testimony due to inconsistencies with the other medical opinion evidence and clinical findings.  Specifically, the ALJ cited to Dr. Yuzak's examination findings and opinions, which the Court has addressed at length above.  Dr. Yuzak's opinions, based on his examination findings, contradict Plaintiff's allegations regarding the severity of her symptoms, particularly that she is required to lay down for hours during the day due to chronic fatigue.  The Court finds these inconsistencies are a clear and convincing reason supported by substantial evidence for discounting Plaintiff's testimony.  "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle*, 533 F.3d at 1161 ("The ALJ also rejected Carmickle's testimony that he can lift only 10 pounds occasionally in favor of Dr. Patton's contradictory opinion that he can lift up to 10 pounds frequently. . . . we conclude [this reason is] supported by substantial evidence in the record.")

The ALJ also properly considered, as one factor, the lack of support in the medical records for Plaintiff's assertion that she suffered from disabling symptoms.  As stated above, the ALJ cited to an imaging center's consultation report that described Plaintiff's spinal impairment as "small hypertrophic spurs on the lower thoracic and lumbar spine." (AR 21, 75, 406.)  As also stated above, the ALJ also cited to Dr. Yuzak's consultative exam, which "revealed no paravertebral muscle spasms, tenderness, crepitation, effusion, deformities or trigger point tenderness." (*Id.* at 413.) Further, the ALJ noted that the treatment records from Plaintiff's treating physician do not contain detailed physical examinations or objective findings to support Plaintiff's claims regarding the severity of her symptoms.  (*Id.* at 22-23.)  A lack of objective medical evidence may not be the sole reason for the ALJ to discredit a claimant's testimony, but it is one factor that may be considered.  *Rollins*, 261 F.3d at 857 ("while subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of claimant's pain…").

The remaining reasons the ALJ gave for discrediting Plaintiff's symptom testimony are not supported by substantial evidence.  The ALJ erroneously relied on Plaintiff's smoking to adversely impact her credibility because it is possible Plaintiff is addicted to cigars and therefore continues to smoke even though she suffers from asthma. *See Bray*, 554 F.3d at 1227 (considering the adverse impact of a smoking addiction on plaintiff's credibility); *see also Shramek v. Apfel*, 226 F.3d 809, 812-13 (7th Cir. 2000) (noting, in dicta, that it is "extremely tenuous" to discredit a claimant's description of her impairments based on claimant's continued smoking because of nicotine's addictive properties).

The ALJ's finding that Plaintiff "may have a motive other than disability for seeking benefits" is also not supported by substantial evidence. (AR 22.) The ALJ does not provide citations to the record that support a finding that Plaintiff is seeking benefits for money alone, not because she is actually disabled. *See Cha Yang v. Comm'r of Soc. Sec. Admin.*, 488 F. App'x. 203, 205 (9th Cir. 2012) (unpublished) (considering a

- 23 -

plaintiff's desire to obtain benefits motivated by financial hardship and finding that "if a petitioner's desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant would ever be found credible.")

However, the Court finds that the ALJ's reliance on Plaintiff's continued smoking and financial hardship, even if erroneous, amounts to harmless error with regard to analyzing Plaintiff's severe physical impairments. *See Batson*, 359 F.3d at 1197 (concluding, even if the record did not support one of the ALJ's state reasons for disbelieving a claimant's testimony, the error was harmless).

## IV.   Remand for further proceedings is appropriate here.

Having determined that the ALJ committed harmful error in dismissing Plaintiff's mental impairments at step two, the Court must vacate the Commissioner's decision.  The remaining issue for the Court is whether to remand this matter for an award of benefits or for further proceedings.  Such a determination is within the Court's discretion.  *Smolen*, 80 F.3d at 1292.

In order to determine when it is appropriate to remand for benefits versus further administrative proceedings, the Ninth Circuit has established a three-part test. First, a court must determine whether "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). Second, the court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Id.* Third, if the court "concludes that no outstanding issues remain and further proceedings would not be useful, [the court] may…find[] relevant testimony credible as a matter of law" and remand for benefits." *Id.* "When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quotation omitted).

Because the ALJ committed harmful error at step-two, the Court finds there are remaining issues for the ALJ to resolve.  Specifically, the ALJ must evaluate the impact of Plaintiff's mental impairments throughout the remainder of the sequential analysis. The Court will therefore remand this case for further proceedings.

Accordingly,

**IT IS ORDERED** that the Commissioners' decision is vacated and this matter is remanded to the Commissioner for further administrative proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 31st day of March, 2017.



Honorable John Z. Boyle
United States Magistrate Judge